## PETTIT v. PETTIT.

(Supreme Court, Appellate Division, Third Department.   May 3, 1905.)

1. MARRIAGE—IMPEDIMENTS—PRIOR EXISTING MARRIAGE—JUDGMENT IN DIVORCE—EFFECT.

Under Code Civ. Proc. § 1774, providing that no final judgment of divorce shall be entered until after the expiration of three months after the filing of the decision of the court or report of the referee, an interlocutory judgment of divorce is ineffectual to dissolve the marriage relation, and a marriage entered into in a foreign state between a party to the divorce suit and a' third person after the entry of the interlocutory judgment, and prior to the entry of final judgment, is absolutely void, under the domestic relations law (Laws 1896, p. 216, c. 272, § 3), declaring a marriage void if contracted by a person whose husband or wife by a former marriage is living, unless such former marriage has been annulled or has been dissolved.

2. SAME—VOID MARRIAGES—ANNULMENT.

No judicial sentence of nullity is necessary in order to free a party to a void marriage, but a decree of annulment is provided for in such case by Code Civ. Proc. § 1742.

3. SAME—RATIFICATION.

While a voidable marriage may be ratified, a marriage which is a nullity because contracted while a prior existing marriage is in force is not the subject of ratification.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Marriage, § 108.]

4. SAME—COMMON-LAW MARRIAGES—STATUTORY PROHIBITION.

While Laws 1901, p. 933, c. 339, requiring a marriage to be solemnized by a clergyman or one of certain officers, or to be evidenced by a written contract of marriage, signed and acknowledged by the parties, was in force, a marriage void when entered into, because of the existence of a prior undissolved marriage, could not be validated by mere cohabitation after the dissolution of such prior marriage.

5. SAME—ANNULMENT—DISCRETION OF COURT.

Plaintiff was the co-respondent in a divorce action in which defendant's wife procured a divorce from defendant. Immediately after the entry of an interlocutory judgment of divorce, plaintiff and defendant went into another state and were married, notwithstanding the amendment to Code Civ. Proc. § 1774, prohibiting the entry of final judgment of divorce until the expiration of three months after the decision of the court, which had just gone into effect, and of which plaintiff and defendant might have been ignorant. Plaintiff was at the time barely eighteen years old, and no children resulted from the marriage. *Held,* that justice would be best subserved by annulling the marriage.

Appeal from Trial Term, Fulton County.

Action by Martha Pettit, by James Noonan, her guardian ad litem, against Joel Pettit. From a judgment dismissing her complaint, plaintiff appeals. Reversed.

See 91 N. Y. Supp. 979.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Eugene D. Scribner, for appellant.

HOUGHTON, J.   The action is brought to obtain a decree annulling the marriage between plaintiff and defendant on the ground that it was void because defendant had a wife living at the time.

In October, 1902, the wife of defendant procured against him, in the Supreme Court of this state, an interlocutory judgment of divorce. Shortly after its entry, and nearly three months before final judgment was entered thereon, the plaintiff and defendant went to the state of Vermont, where a marriage ceremony was performed. They immediately returned to this state, and lived together as husband and wife until July, 1904. The interlocutory judgment was in the form prescribed by section 1774 of the Code of Civil Procedure, and adjudged that the defendant's then wife was entitled to a decree of divorce on the ground of adultery of this defendant, and that final judgment awarding the same should be entered at the expiration of three months after its own entry, as of course, unless the court should otherwise order.

We concur in the conclusion of the learned court below that the interlocutory judgment was ineffectual to dissolve the marriage relation between the defendant and his former wife. That was not accomplished until the entry of the final judgment in the February following. The defendant's former wife is still alive, and prior to the entry of final judgment he had no legal right to enter into marital relations in any foreign state with this plaintiff. The very object of the amendment of the section of the Code was to prevent the unseemly haste which was customary, and to postpone the right of either party to remarry in any jurisdiction until final judgment should be entered. No final judgment dissolving the marriage relations between defendant and his former wife having been entered, and she being alive, the marriage of defendant to plaintiff was absolutely void. Domestic Relations Law, § 3 (Laws 1896, p. 216, c. 272); Amory v. Amory, 6 Rob. 514. Being void, and not merely voidable, no judicial sentence of nullity was necessary to free the plaintiff. 1 Bishop on Marriage & Divorce, § 299; Patterson v. Gains, 6 How. (U. S.) 592, 12 L. Ed. 553. The Code of Civil Procedure, however, provides that a party may obtain a decree in such case. Section 1743.

While there are cases holding that it is the duty of the court to grant a decree declaring void a marriage where one of the parties had a husband or wife living at the time (Appleton v. Warner, 51 Barb. 270), yet there are well-considered cases holding that the court has the right to withhold such relief unless the party asking it comes into court with clean heands (Taylor v. Taylor, 63 App. Div. 231, 71 N. Y. Supp. 411; Kerrison v. Kerrison, 8 Abb. N. C. 444; Tait v. Tait, 3 Misc. Rep. 218, 23 N. Y. Supp. 597). In Finn v. Finn, 62 How. Prac. 83, and in McCarron v. McCarron, 26 Misc. Rep. 158, 56 N. Y. Supp. 745, the relief was granted. In the latter case it was said:

"If, however, the plaintiff contracted the marriage with full knowledge of the situation, a court of equity would simply leave him where he had placed himself, and refuse its decree formally declaring said marriage void."

The plaintiff's complaint herein was not dismissed upon the ground that the court exercised its discretion in refusing to her the

relief asked, but upon the ground that the plaintiff had contracted a new marriage with the defendant by living with him as his wife after the entry of the final judgment. We cannot concur in this view. The marriage was a nullity. It was not subject of ratification as such. This principle applies only to voidable marriages, good until set aside, concerning which the Code provides that no decree of annulment shall be granted, in case of force or duress, if it appears at any time before the commencement of the action the parties voluntarily cohabited as husband and wife; or on the ground of fraud, if they have done so with full knowledge of the facts constituting the fraud; or in case of lunacy, after the disability shall have been removed. Code Civ. Proc. §§ 1750, 1747. There was no new ceremony after the entry of the final judgment, nor any new contract. Indeed, the plaintiff and defendant could make no contract between themselves, aside from a ceremonial marriage, except in writing, signed by both of them, and witnessed by at least two persons, and acknowledged, for chapter 339, p. 933, of the Laws of 1901, was then effective, and so-called parol common-law marriages had been done away with.

Without committing ourselves to the proposition that the court is either compelled to or should in all cases grant a formal decree of nullity when the marriage is void, we think this is a case where the ends of justice will be best subserved by granting to the plaintiff such a decree. There are no children. She is young, being barely 18 years of age when the ceremony was performed. The amendment to section 1774 of the Code had been in effect less than two months when the interlocutory judgment was granted. The plaintiff, as well as the defendant, may not have known of the new provision, and may well have thought they had the right to marry in a foreign state at once. It is true that this plaintiff was the corespondent in the divorce action, but the defendant may have attempted in good faith to make such reparation as he could by marriage. It having failed, no good can come of allowing the cloud of an undeclared void marriage to hang over the plaintiff for the remainder of her life.

There was no appearance by the defendant in the court below or upon this appeal. It would be proper for us to direct such judgment in favor of the plaintiff as her complaint demands and her proofs warrant, except for the fact that the affidavit of service of the summons does not conform to the requirements of rule 18 of the general rules of practice, in failing to state what knowledge the person making the service had of the person served being the defendant, and how such knowledge was acquired. This can doubtless be supplied on a rehearing at Special Term.

The judgment should be reversed, and a new trial granted, upon supplying such defect, without costs of this appeal. All concur.