Glen F. Wilson, Plaintiff, v. Sadie Rada Farmer Burnett, Defendant.

(Supreme Court, Erie Special Term, December, 1918.)

Marriage — action for annulment of — what makes a valid common-law marriage — divorce — husband and wife.

In an action to annul a marriage entered into in August, 1914, on the ground that the defendant had another husband living at the time of her marriage to plaintiff it appeared that an interlocutory decree had been entered in her favor in an

action against the former husband for divorce and that about ten days before the entry of the final decree she was married to plaintiff, who testified that at the time of his marriage to defendant, he did not know that said final decree had not been entered. It further appeared that from the time of the marriage sought to be annulled until about a week before the present action was commenced the parties had lived as husband and wife. *Held*, that though the marriage involved in the present action was illegal yet having apparently been entered into in good faith with intent to contract a valid marriage plaintiff was not entitled to the relief asked, for the reason that the facts disclosed made out a valid common-law marriage.

ACTION to annul a marriage.

Sanford F. Church, for plaintiff.

Henry W. Fox, for defendant.

WHEELER, J.    This action is brought to annul the marriage of the parties on the ground that the defendant had another husband living at the time she contracted her marriage with the plaintiff.    The defendant does not answer, but comes into court with her attorney and counsel and consents to the granting of any judgment the facts will warrant.    The facts as presented by the testimony of the parties are that the defendant had a former husband.    She had brought an action against him for an absolute divorce.    An interlocutory decree had been entered in her favor in that action, but about ten days before the entry of the final decree she married the plaintiff.    This she had no right to do, as her former marriage was not dissolved until the entry of the final decree.    This occurred in 1914.    The plaintiff testifies that at the time of his marriage to the defendant he did not know a final decree in the divorce action had not been entered.    We assume that the defendant supposed the

interlocutory decree which had been entered permitted her to marry although as matter of law she was in error in that respect, and the marriage void. *Pettit* v. *Pettit,* 105 App. Div. 312. The evidence further shows that from the time of their marriage in 1914 until about a week before this application is made the plaintiff and defendant have lived together as man and wife.

We think the plaintiff is not entitled to the relief asked, for the reason that the facts disclosed make out a valid common-law marriage.

After the adoption of chapter 339 of the Laws of 1901, common-law marriages became and remained invalid until the law was changed in 1907. In that year, by chapter 742, various amendments to the Domestic Relations Law were adopted, various sections were repealed, among them section 6, adopted in 1901, prohibiting, and declaring void, marriages contracted otherwise than in the manner prescribed by the article containing that section. In *Matter of Ziegler* v. *Cassidy's Sons,* 220 N. Y. 98, the Court of Appeals has construed the effect of the amendment referred to and held that the law originally prevailing again came into operation and effect, and common-law marriages again became valid. See also *Matter of Hinman,* 147 App. Div. 452; affd., 206 N. Y. 653; *Allerton* v. *Allerton,* 104 Misc. Rep. 627.

Cases will be found holding that the fact that the parties to the second marriage lived together after the entry of a final judgment does not constitute a ratification of a void marriage. *Pettit* v. *Pettit,* 105 App. Div. 312; *McCullen* v. *McCullen,* 162 id. 599.

In the *Pettit* case the court based its decision upon the provisions of chapter 339 of the Laws of 1901 before the subsequent amendments were passed by the

legislature, holding that under that act no contract of marriage aside from a ceremonial marriage, except in writing signed by both parties, was valid. In the case of *McCullen* v. *McCullen* the decision of the court was based upon the same grounds.

Now, however, by reason of the amendments of 1907 ceremonial marriages are no longer required, and the old common-law marriage may be sustained provided the facts presented justify the finding of fact that the parties did in truth and in fact agree to enter into and sustain the marriage relation.

Accordingly it was held in *Summo* v. *Snare & Triest Co.*, 166 App. Div. 425, where a decedent, when living in Italy, had entered into meretricious relations with a woman at a time when she had a husband and he had a wife living, and they thereafter came to this country and cohabited together in all respects as husband and wife, and children were born to them, and baptized in the father's name, and during such intercourse the lawful wife and husband of the parties died, permitting their lawful marriage, that an agreement between them to be lawful husband and wife made them such and the children of such marriage became legitimate, although there was no ceremonial marriage. After the removal of legal impediments parties may become by agreement lawful husband and wife, although their previous relations may have been unlawful. *Summo* v. *Snare & Triest Co.*, 166 App. Div. 431.

Bearing in mind, therefore, these general principles of law the question presented is whether from the facts now appearing the court is justified in holding that after the final judgment of divorce in favor of the defendant against her former husband had been entered, and the legal impediment removed to her marriage, the plaintiff and the defendant in fact consented

and agreed to be husband and wife. If they did, then their marriage is valid and this court cannot annul it, and should not.

In the beginning it should be borne in mind that while the marriage of the parties in August, 1914, was illegal, nevertheless it apparently was made in good faith with the purpose and intent of both to contract a valid marriage. In this respect it differs from cases where parties come together simply for purposes of illicit intercourse. Where such relations are originally established they are presumed to continue. Here, however, it was the evident purpose of the plaintiff and defendant to be legally married, and to assume toward each other the mutual obligations of husband and wife. When the legal impediment to their marriage was removed they continued to live together as husband and wife for more than four years and while the testimony is very meagre the only fair inference is that they held themselves out to the public as such, and beyond any question intended to continue that relationship, until suddenly for some reason not disclosed, agreed to ask this court to annul the marriage. The court can reach but one conclusion under such circumstances, and that is that after the impediment against a legal marriage was removed they each consented and agreed to continue their relations as husband and wife and acted accordingly. This made out a good common-law marriage as we have already seen. There are no children as the issue of this marriage, but had there been such issue, no court, we take it, would have decided the children illegitimate.

It makes no difference in principle, however, whether there are children or not. Every presumption is in favor of the validity of a marriage (*Allerton* v. *Allerton,* 104 Misc. Rep. 627; *Matter of Biersack,* 96 id.

161; *Fagin* v. *Fagin,* 88 id. 304; *Price* v. *Tompkins,* 171 N. Y. Supp. 844), and the relation established and recognized for the time this one had been, ought not to be lightly set aside at the mere wish and suggestion of the parties. The marriage relation is too sacred to be thus trifled with. The plaintiff's application is denied.

Ordered accordingly.